UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

September 16, 2014

Dawn Marie McCarty
283 DePaul Street
Emmitsburg, MD 21727

Aparna Srinivasan, Esquire
Social Security Administration
Altmeyer Building
6401 Security Blvd Rm 617
Baltimore, MD 21235

RE:  *Dawn McCarty v. Commissioner, Social Security Administration*;
Civil No. SAG-13-1153

Dear Ms. McCarty and Counsel:

On April 19, 2013, the Plaintiff, Dawn McCarty, petitioned this Court to review the Social Security Administration's final decision to affirm a denial of disability benefits. (ECF No. 1). I have considered the May 12, 2014 letter from Ms. McCarty and her husband regarding her current medical condition, (ECF No. 19), and the Commissioner's Motion for Summary Judgment. (ECF No. 21).[1] I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater,* 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will grant the Commissioner's motion. This letter explains my rationale.

Ms. McCarty filed a claim for disability insurance benefits on June 23, 2010, alleging disability beginning on June 1, 2010. (Tr. 129-35). Her claim was denied on October 15, 2010 (Tr. 53-56), and on reconsideration on February 16, 2011 (Tr. 63-64). A hearing was held on March 15, 2012, before an Administrative Law Judge ("ALJ"). (Tr. 23-50). On April 23, 2012,

---

[1] Ms. McCarty was represented by counsel at the time that she filed this petition for review. Prior to the extended deadline for her summary judgment motion, Ms. McCarty's counsel filed a motion to withdraw because Ms. McCarty disagreed with her counsel's recommendation that the appeal be dismissed. (ECF No. 13). An Order granting counsel's Motion for Leave to Withdraw was entered on January 6, 2014. (ECF No. 14). The Commissioner filed its Motion for Summary Judgment on July 9, 2014, and a Rule 12/56 letter was mailed to Ms. McCarty the next day, advising her of the potential consequences of failure to oppose the Commissioner's motion. (ECF No. 23). Ms. McCarty wrote back, advising that she had not received the Commissioner's motion, and requesting additional time to respond. (ECF No. 25). Although the extension was granted, Ms. McCarty did not file any additional substantive documents to support her appeal or to oppose the Commissioner's motion.

*Dawn McCarty v. Commissioner, Social Security Administration*
Civil No. SAG-13-1153
September 16, 2014
Page 2

the ALJ issued an opinion determining that Ms. McCarty was not disabled. (Tr. 9-22). The Appeals Council denied Ms. McCarty's request for review, (Tr. 1-4), so the ALJ's decision constitutes the final, reviewable decision of the agency.

The ALJ found that during the relevant time period, Ms. McCarty suffered from the severe impairments of relapsing polychondritis, rheumatoid arthritis, and obesity. (Tr. 15). Despite these impairments, the ALJ determined that Ms. McCarty retained the residual functional capacity ("RFC") to perform:

> sedentary work as defined in 20 CFR 404.1567(a) except she requires a sit/stand option, allowing her to alternate between a sitting and standing position at least every hour. The claimant can perform occasional balancing, stooping, crouching, and crawling. She can use ramps and climb stairs occasionally, but can never climb ladders, ropes, or scaffolds. The claimant must avoid concentrated exposure to noise and avoid hazards, including moving machinery and unprotected heights.

(Tr. 16). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. McCarty could perform jobs that exist in significant numbers in the national economy, and that she was therefore not disabled during the relevant time frame. (Tr. 20-22).

Ms. McCarty has not filed a formal motion in support of her appeal, although she and her husband submitted a letter about her medical condition. (ECF No. 19). I have carefully reviewed the ALJ's opinion and the entire record. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping an analytical framework for judicial review of a *pro se* action challenging an adverse administrative decision, including: (1) examining whether the Commissioner's decision generally comports with regulations, (2) reviewing the ALJ's critical findings for compliance with the law, and (3) determining from the evidentiary record whether substantial evidence supports the ALJ's findings). For the reasons described below, substantial evidence supports the ALJ's decision.

Following a detailed discussion of Ms. McCarty's continued part-time employment from June, 2010 through June, 2011, the ALJ ruled in Ms. McCarty's favor at step one, finding that she had not engaged in substantial gainful activity between her alleged onset date and June, 2011. (Tr. 14-15). Further, the ALJ's sequential evaluation appears to address, at step two, each of the impairments Ms. McCarty suffered during the relevant time frame. As noted above, the ALJ concluded that several of Ms. McCarty's impairments were severe. After finding at least one severe impairment, the ALJ continued with the sequential evaluation process and considered all of the impairments, both severe and non-severe, that significantly impacted Ms. McCarty's ability to work. *See* 20 C.F.R. § 404.1523. Accordingly, I find no basis for remand.

At step three, the ALJ determined that Ms. McCarty's impairments did not meet the specific requirements of, or medically equal the criteria of, any listings. (Tr. 15-16). The ALJ

*Dawn McCarty v. Commissioner, Social Security Administration*
Civil No. SAG-13-1153
September 16, 2014
Page 3

considered the specific requirements of Listing 14.09, which pertains to inflammatory arthritis. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.09. I agree that no listings were met as of the date of the ALJ's opinion.[2] The relevant section of Listing 14.09 requires a claimant suffering from inflammatory arthritis to demonstrate either an "inability to ambulate effectively" or an "inability to perform fine and gross movements effectively." *Id.* at § 14.09(A). An inability to ambulate effectively is defined as "an extreme limitation of the ability to walk." *Id.* at § 1.00(B)(2)(b). Examples of ineffective ambulation include the inability to walk without the use of a walker, the use of two crutches or two canes, or the inability to carry out routine ambulatory activities, such as shopping and banking. *Id.* As of the date of the ALJ's opinion, the evidence did not reflect that Ms. McCarty's impairments fulfilled that criteria. Moreover, there is no other listing applicable to polychondritis. I therefore concur with the ALJ's assessment.

The ALJ considered the additional and cumulative effects of Ms. McCarty's obesity, as required by § 1.00(Q). The ALJ noted Ms. McCarty's body mass index (BMI) at the time of the hearing, and properly considered the interaction between her obesity and her co-existing impairments. (Tr. 15-16).

At step four, the ALJ determined Ms. McCarty's RFC. My review of the ALJ's decision is confined to whether substantial evidence supports the decision and whether correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971). Even if there is other evidence that may support Ms. McCarty's position, I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In considering the entire record, I find the ALJ's RFC determination was supported by substantial evidence.

First, the ALJ summarized Ms. McCarty's subjective complaints. (Tr. 16). The ALJ did not find Ms. McCarty's statements concerning the intensity, persistence, and limiting effects of her symptoms to be credible to the extent that they were inconsistent with the ALJ's RFC assessment. (Tr. 17). The ALJ reviewed Ms. McCarty's medical records during the relevant time frame, and noted Ms. McCarty's complaints of pain, the results of her objective testing, such as X-rays, and the results of her physical examinations, particularly focusing on tenderness, range of motion, and strength. (Tr. 17-18). For example, the ALJ noted that in June of 2010, Ms. McCarty complained of severe chest/rib pain. (Tr. 17). However, all of the diagnostic testing was normal and the physical examination revealed only focal point tenderness. *Id.* After injections and medications, Ms. McCarty reported significant improvement. *Id.*

---

[2] In her letter to this Court, Ms. McCarty alleges that her fingers are so inflamed that she is unable to write/type the correspondence, and that she is sometimes unable to inject her medications. (ECF No. 19 at 1-2). That type of evidence might be relevant to a current analysis of Listing 14.09 because it may illustrate Ms. McCarty's inability to perform fine movements. However, this Court's analysis is limited to her condition pre-dating the ALJ's opinion of April 23, 2012. Moreover, Ms. McCarty's letter further references a recent diagnosis of fibromyalgia, which was not evident from the record as of April of 2012, but would permit evaluation of her claim under Social Security Ruling (SSR) 12-2p if she were to file a new application for benefits.

In assessing Ms. McCarty's credibility, the ALJ also considered her activities of daily living, which included regular child care for her grandson, and her ability to continue part-time employment as a housekeeper or cleaner during most of the period pre-dating the ALJ's opinion. As the ALJ noted, "Although the claimant's work activity does not constitute disqualifying substantial gainful activity, it does indicate that the claimant's daily activities are somewhat greater than the claimant has generally reported and further supports that although she may not be able to perform her past relevant work she is capable of other work." (Tr. 18). Additionally, the ALJ noted that Ms. McCarty's assertions of side effects from her medication were not corroborated by her medical treatment notes, which either showed no side effects or side effects that could be controlled by other medications, such as an anti-nausea medication. (Tr. 18-19).

Finally, the ALJ appropriately addressed the opinions from various medical sources. Ms. McCarty's treating doctor for scleritis, Dr. Whitlock, had opined that scleritis is a very painful condition during an attack. (Tr. 374-77). However, as the ALJ noted, the record showed no evidence of scleritis after the alleged onset date, and Dr. Whitlock had provided no treatment since 2008. (Tr. 19, 374). The ALJ therefore assigned the opinion "little weight." (Tr. 19). Similarly, the ALJ provided an extensive analysis of the opinions rendered by another treating physician, Dr. Olson. (Tr. 19). Dr. Olson issued one opinion on or about April 18, 2011, in which she opined that Ms. McCarty could only stand/walk for less than two hours in a workday and could sit for about four hours, and had significant limitations in fingering and handling and would be unable to perform twisting, stooping, crouching or climbing. (Tr. 378-81). Almost one year later, on March 7, 2012, Dr. Olson wrote a letter in which she agreed "with prior residual functional capacity questionnaire filled out one year prior." (Tr. 397). As the ALJ noted, Dr. Olson's treatment notes do not support the extreme limitations in the residual functional capacity questionnaire. (*See, e.g.,* Tr. 398-419 (treatment notes showing generally normal physical examinations, with the exception of occasional costochondral tenderness and one instance of tenderness and swelling in one finger, and little to no side effects from medication)). Moreover, as the ALJ further noted, when Dr. Olson filled out that questionnaire in 2011, Ms. McCarty was still working part-time as a housekeeper, performing many of the duties that Dr. Olson opined she could not perform.[3] (Tr. 19). Finally, the ALJ noted that Dr. Olson "agreed with" her earlier opinion in the letter opinion approximately one year later, which stands in contrast to Ms. McCarty's own testimony that her condition had worsened severely over that one-year period. *Id.* Accordingly, the ALJ assigned "little weight" to Dr. Olson's opinions. Finally, and significantly, the ALJ did not blindly accept the opinions of the non-examining state agency physicians, Dr. Robbins and Dr. Rudin. (Tr. 20). Although those physicians had deemed Ms. McCarty capable of light work, the ALJ rejected those opinions in Ms. McCarty's favor, instead finding her capable of only a reduced range of sedentary work. (Tr. 20).

---

[3] Dr. Olson also stated that the severe functional limitations had existed since 2006. (Tr. 381). However, Ms. McCarty worked full-time as a housekeeper for several years after that date. *See* (Tr. 141) (earnings records showing earnings exceeding $25,000 for 2006-2009), (Tr. 139-40) (reflecting that Ms. McCarty had been employed as a housekeeper with the same company from 1994 through 2010).

As part of step four, the ALJ must determine whether the claimant is capable of performing any past relevant work. Here, the ALJ heard testimony from the VE regarding the ability of a person with Ms. McCarty's RFC to perform past relevant work as a cleaner or housekeeper and a cashier. (Tr. 47-49). Because both of those jobs are performed at the light level of exertion, the ALJ concluded that Ms. McCarty's RFC precluded the performance of her past relevant work. (Tr. 20). At step five, the ALJ asked the VE whether jobs existed in the national economy that were suited to Ms. McCarty's particular RFC assessment. (Tr. 47-48). The VE testified that a person with Ms. McCarty's RFC would be capable of performing the jobs of receptionist, telephone solicitor, service clerk, and order clerk. (Tr. 48). The VE further testified that while the option to sit and stand is not contemplated in the *Dictionary of Occupational Titles*, each of those jobs would permit the option to sit and stand in the experience of the VE. *Id.* Based on the VE's testimony, the ALJ concluded that Ms. McCarty is capable of successfully adjusting to other work that exists in significant numbers in the national economy. (Tr. 21-22). I find that the ALJ's determination was supported by substantial evidence.

For the reasons set forth herein, the Commissioner's motion for summary judgment (ECF No. 21) will be GRANTED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge